UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 04-2946(DSD/JJG)

Gerald W. Eick,

       Plaintiff,

v.                                                    **ORDER**

Northwestern Mutual Life
Insurance Company,

       Defendant.


    Christopher M. Roe, Esq., Randall C. Berkland, Esq., William A. Moeller, Esq. and Blethen, Gage & Krause, P.O. Box 3049, Mankato, MN 56002, counsel for plaintiff.

    Erik T. Salveson, Esq., Kelly W. Hoversten, Esq. and Gray, Plant, Mooty, Mooty & Bennett, 80 South Eighth Street, Suite 500, Minneapolis, MN 55402, counsel for defendant.


    This matter is before the court upon defendant's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants defendant's motion.


**BACKGROUND**

    This is an action for breach of contract. Plaintiff Gerald W. Eick purchased a disability income policy from defendant The Northwestern Mutual Life Insurance Company ("Northwestern") on December 21, 1992. On November 30, 2000, plaintiff submitted to defendant a request for disability benefits. On July 10, 2001,

defendant denied plaintiff's request. Plaintiff claims that defendant's denial of benefits constitutes a breach of the policy.

Plaintiff worked as an accountant at Abdo, Eick & Meyers ("Abdo") from 1974 until June of 2002. Plaintiff first experienced symptoms of depression in 1984 when he was going through a divorce. He sought professional help and quickly recovered. In 1996, however, his depression and anxiety returned around the same time that malpractice claims were brought against him. Plaintiff went to his family physician, Dr. Gregory R. Kutcher, in September of 1996. Dr. Kutcher diagnosed plaintiff with major depressive disorder and prescribed Paxil and Xanax. Plaintiff's depression began to improve within a month. By October of 1997, he stopped taking Paxil, and his depression was completely resolved by December of 1997. (Eick Dep. at 109-10.)

Plaintiff did not contact Dr. Kutcher again about mental health issues until February 25, 1999. His symptoms of depression had returned, but they were not as bad as they had been in 1996. He began taking Paxil again. Around that time, plaintiff also began thinking about withdrawing as a partner from Abdo, spending more time with his family and working less to reduce stress. Plaintiff saw Dr. Kutcher in November of 1999 and reported problems with concentration and fatigue, but had "no particular problems at work or otherwise." (Eick Dep. at 136.) He began taking Celexa instead of Paxil. Celexa resolved plaintiff's fatigue while

continuing to resolve his depression symptoms.  As recommended by Dr. Kutcher, plaintiff received cognitive behavioral therapy from psychologist Lisa R. Clemensen in early 2000.[1]  His mental condition remained relatively stable thereafter, although plaintiff would on occasion inform his doctor of poor concentration and difficulty multitasking at work.

The other partners at Abdo noticed as early as 1998 that plaintiff had difficulty multitasking and completing projects.  In March of 2000, clients complained about delays related to plaintiff's work.  As a result, he was reassigned to reviewing others' work.[2]  In June of 2000, plaintiff and his partners at Abdo negotiated a separation agreement.  The agreement stated that plaintiff was "experiencing medical problems" and that all parties believed that he "may become disabled."  (Salveson Aff. Ex. 7 at 1.)  He therefore withdrew as a partner but remained as an employee of Abdo.  Before the separation agreement, plaintiff had worked approximately 2,700 hours per year.  However, as of June 1, 2000, the agreement limited him to a maximum of 1,000 hours per year.  Plaintiff alleges that his problems functioning at work continued even after executing the separation agreement.

_____

[1]  Plaintiff later resumed cognitive therapy with Clemensen in late 2001.

[2]  Other alleged problems with plaintiff's work included failing to file a required form with the IRS in 2001 and becoming unmanageably irritable during a three-day audit in Salt Lake City, Utah, in 2002.

Plaintiff's work history since 2000 indicates a marked reduction in hours worked and income received.  In 2000, plaintiff began teaching part-time at Minnesota State University ("MSU").  In June of 2002, plaintiff left Abdo and joined the Weerts Companies ("Weerts") as its chief financial officer and controller.  That same year, he also joined the board of directors for Northern Star Bank.  Plaintiff's total hours worked since 1999 are as follows:

| Year (5/1 to 4/30) | Hours | Income |
|---|---|---|
| 1999 | 2,750 | $169,974 |
| 2000 | 2,754 | $145,703 |
| 2001 | 1,130 | $ 39,698 |
| 2002 | 2,137 | $ 85,820 |
| 2003 | 1,470 | $ 97,311 |
| 2004 | 1,530 | $ 80,646 |

(Eick Aff. ¶¶ 2, 7.)   In July of 2005, plaintiff left his employment at Weerts and MSU.  He now consults for Weerts and works part-time for the Parasol Community Foundation as their chief financial officer.

Medical evaluations of plaintiff since 2000 are fairly consistent.  On May 15, 2001, psychologist Paul A. Arbisi examined plaintiff on behalf of defendant.  Arbisi concluded that plaintiff was mildly impaired and could not resume his prior work load due to both an inability to tolerate stress and a realignment of personal priorities.  On December 29, 2004, Dr. Kutcher opined that plaintiff's "reduction in hours, income, and ultimately his leaving [Abdo] resulted from his ongoing and continued mental health

4

illness which he has had since at least mid-1999."[3]  (Berkland Aff.
Ex. 8 at 3.)    In  an  undated  neuropsychological  assessment,
psychologist  Theodore  M.  Surdy  concluded  that  plaintiff's
"difficulties  with  attention,  concentration,  multitasking,  and
memory" caused his significant reduction in work hours and eventual
retirement from Abdo.  (Id. Ex. 7 at 17.)

In  November  of  2000,  a  few  months  after  executing  the
separation  agreement  with  Abdo,  plaintiff  submitted  a  claim  for
disability  benefits  to  defendant.   His  claim  was  based  in  part  on
depression  and  anxiety,  which  allegedly  caused  difficulties  with
concentration and alertness.  (See Salveson Aff. Ex. 5 at 2.)  He
claimed  that  the  disability  began  in  September  of  1996.[4]   Under
plaintiff's  policy,  an  insured  is  partially  disabled  if  he  has  at
least a twenty percent loss in income and is unable (1) "to perform
one  or  more  of  the  principal  duties  of  his  occupation"  or  (2)  "to
spend  as  much  time  at  his  occupation  as  he  did  before  the
disability started."  (Id. Ex. 4 at 4.)  Further, the disability
must result from an accident or sickness.  (Id. Ex. 3 at 5.)  If
all  of  the  above  conditions  are  met,  benefits  begin  to  accrue  on

---

[3]  Clemensen apparently agreed with Dr. Kutcher's opinion as
stated  in  an  earlier  letter.   (See Berkland Aff. Ex. 9 at 2.)

[4]  In  his  deposition,  plaintiff  testified  that  although  his
depression symptoms began in 1996, he did not become disabled until
late fall of 1997 or early 1998.  (See Eick Dep. at 12.)  Later in
the deposition, he clarified that he believed he became disabled in
January or February of 1999.  (See id. at 125-27.)

the 366th day of disability in the first 730 days after the disability began.  (Id. Ex. 3 at 3, 5.)  On July 10, 2001, defendant denied plaintiff's request for benefits, pointing to his alleged failure to meet the beginning date requirement.

Plaintiff brought a state court action against defendant in May of 2004, alleging breach of contract.  On June 14, 2004, defendant removed the action to this court pursuant to 28 U.S.C. § 1441.[5]  Defendant now moves for summary judgment on plaintiff's breach of contract claim.


## DISCUSSION

### I.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

---

[5]  Because the matter in controversy exceeds $75,000 and is between citizens of different states, the court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a).

A fact is material only when its resolution affects the outcome of the case.  _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See _id._ at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See _id._ at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.  See _Celotex_, 477 U.S. at 324.

## II.  Partial Disability

Defendant argues that plaintiff has failed to show that he became partially disabled as defined in the policy.  First, defendant alleges that plaintiff's disability did not result from an accident or sickness as required by the policy.  (See Salveson Aff. Ex. 3 at 5.)  Rather, defendant contends that plaintiff's reduction in time spent at work resulted from a contractual limit on his work load, as specified in the separation agreement executed in June of 2000.  Second, defendant alleges that plaintiff has not shown an inability (1) to perform one or more principal duties of his occupation or (2) to spend as much time at his occupation as he did before the disability began.  (See _id._ Ex. 4 at 4.)

In response, plaintiff points to medical evidence and testimony from his former partners at Abdo. Based on the evidence proffered, a reasonable jury could conclude that plaintiff's mental health issues caused his inability to perform one or more principal duties of his occupation as accountant, caused him to spend less time at his job and ultimately resulted in a reduction in hours worked. Therefore, genuine issues of material fact preclude summary judgment on whether plaintiff eventually became partially disabled. See BLH v. Northwestern Mut. Life Ins. Co., 92 F. Supp. 2d 910, 916-17 (D. Minn. 2000) (denying summary judgment on disability because doctor's opinion, among other things, indicated that mental disorder affected plaintiff's ability to work); Merrick v. Northwestern Mut. Life Ins. Co., 2001 WL 34152095, at *15 (N.D. Iowa July 5, 2001) (denying summary judgment on partial disability where work history and medical evidence indicated inability to tolerate full-time work).

## III. Beginning Date

In the alternative, defendant argues that plaintiff is not entitled to partial disability benefits because he has failed to satisfy the beginning date requirement of the policy. Plaintiff's policy provides that benefits begin to accrue on the 366th day of disability in the first 730 days after the disability began. (See Salveson Aff. Ex. 3 at 3, 5.) It is undisputed that plaintiff's disability did not rise to the level of "partial disability," as

defined by the policy, until June of 2000 because his income did not decrease by at least twenty percent until that date.   As to when his disability began, the record reflects that plaintiff identified various dates: September of 1996, late fall of 1997, early 1998 or January or February of 1999.   (See id. Ex. 5 at 2; Eick Dep. at 12, 125-27.)   However, all of the dates offered by plaintiff are too early to satisfy the beginning date requirement. Even by the most recent alleged date of February 1999, plaintiff cannot show that he was partially disabled within the meaning of the policy for 366 days in the first 730 days after February 1999 because his income did not sufficiently decrease until June 2000.

In response, plaintiff argues that despite his testimony, his disability must have begun in June of 2000 because that was when he first met the definition of partially disabled under the policy. However, an insured can suffer an accident or illness that causes a disability not immediately covered by the policy because the insured's income does not decrease right away.   The disability, however, triggers the 730-day time frame in which income must decline and the other prerequisites to coverage must manifest for a minimum of 366 days.   The beginning date requirement thus precludes coverage for disabilities that are minimal or only slowly rise to the level of "partial."   By contrast, plaintiff's interpretation of the beginning date requirement could allow partial disability benefits for an insured whose disability began

decades before he ever experienced a loss in income.  Such a result eviscerates the very purpose of the beginning date requirement. For these reasons, plaintiff's argument is rejected.

Plaintiff points to no evidence in the record to show that his disability began in June of 2000.  To the contrary, plaintiff specifically testified in his deposition that he reviewed his records and believed that his disability due to mental illness began in January or February of 1999.[6]  (See Eick Dep. at 126.) Medical evidence and testimony from his partners at Abdo further support the conclusion that plaintiff's disability began in or before early 1999.  (See, e.g., Berkland Aff. Ex. 8 at 3.)  Because the record is clear, the court declines plaintiff's invitation to ignore the facts in order to fit his claim within the bounds of the policy.  Therefore, defendant is entitled to summary judgment based on plaintiff's failure to satisfy the beginning date requirement.

---

[6]  When plaintiff so testified, he apparently read and understood the beginning date requirement because he also stated that he believed benefits were payable to him as of January or February of 2000, or 366 days after his disability began.  (See Eick Dep. at 126.)

**CONCLUSION**

Based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment [Doc. No. 13] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 9, 2005

s/David S. Doty
David S. Doty, Judge
United States District Court

11